UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 13-09719-CPM |
| AVANTAIR, INC. | § | (Involuntary Chapter 7) |
| | § | |
| Involuntary Debtor. | § | **(Emergency Hearing Requested)** |
| _____/ | | |

## EMERGENCY MOTION FOR APPOINTMENT OF AN INTERIM CHAPTER 7 TRUSTEE PURSUANT TO 11 U.S.C. § 303(g)

Petitioning Creditors SOLDIER CREEK RANCH, LLP, JOEL TRAMMELL, and MICHAEL L. ALLRED, CO-TRUSTEE OF THE MICHAEL L. ALLRED REVOCABLE TRUST ("**Petitioning Creditors**") file this Motion for Immediate Appointment of an Interim Chapter 7 Trustee Pursuant to 11 U.S.C. § 303(g), as follows:

### Introduction

1. Avantair, Inc. ("**Avantair**") is a Delaware corporation with its principal place of business located at 4311 General Howard Drive, Clearwater, Florida 33762. Avantair has been in business at least 5 years following a name change from a predecessor entity.

2. Avantair is in the business of providing private jet aircraft services. It provides fractional ownership, jet leasing, and jet card programs to its customers. Avantair operates a fleet of Piaggio P180 aircraft for this purpose.[1] Avantair manages the fractional ownership program which it refers to as the Avantair Fractional Aircraft Ownership Program (the

---

[1] According to it Form 10-Q filed with the SEC in September 2012: "As of September 30, 2012, Avantair operated 57 aircraft within its fleet, which comprises 44 fractionally-owned aircraft, 6 company-owned core aircraft and 7 leased and company-managed aircraft."

"**Program**"). Avantair is responsible for registering and maintaining all aircraft which are part of the Program. They allege they own 57 aircraft.

3. Under the Program, among other things, Avantair provides a service in which individuals or businesses purchase fractional ownership interests in aircraft from Avantair under contracts designed for this purpose. Each fractional owner executes a management agreement with Avantair and a dry lease exchange agreement. Pursuant to the arrangements, the program management ensures that the program conforms to all applicable regulatory requirements of federal and state agencies with oversight of the industry.

4. Avantair is required to make Program aircraft available to fractional owners on an as-needed basis with properly trained, qualified, and available flight crew. Further, fractional owners engage Avantair to provide or procure certain administrative and aviation support services with respect to the aircraft including, without limitation, scheduling, maintenance, insurance, record keeping, registration, flight crew training and scheduling, and fuel for the aircraft (which they charge for and/or credit back to the owner).

5. Petitioning Creditors, as well as many others who are similarly situated, entered into and participated in the flight/aircraft Programs with Avantair by executing agreements entitled Aircraft Repurchase Agreement and Management & Dry Lease Exchange Agreement and renewals of these agreements.[2] Pursuant to these agreements, Petitioning Creditors, as well as others who are similarly situated, purchase a fractional interest in specified aircraft, which bear serial numbers and FAA registration numbers. The ownership interest is undivided.

---

[2] Representative examples of the renewal agreements relating to the referenced contracts are attached to this Motion as **Exhibits "1" and "2."**

6. Under and pursuant to the aircraft purchase agreements, Avantair represents and warrants that:

> On the Transfer Date (i) the Aircraft shall have had a valid United States Standard Airworthiness Certificate, (ii) all manufacturer's mandatory inspection items shall be current, (iii) the Aircraft shall have been airworthy and fully operational and fully equipped and otherwise fit for operations under FAR Parts 91K and 135, and (iv) all Mandatory Service Bulletins and all FAA Airworthiness Directives with due dates prior to the Transfer Date shall have been complied with. Seller acknowledges that Purchaser will rely upon this representation in making a similar representation under the MDLA [Management & Dry Lease Exchange Agreement].

In the aircraft purchase agreements, Avantair makes further representations and warranties with respect to availability, insurance, maintenance and inspection of the aircraft.

7. On information and belief, Avantair is a fractional owner of most of the aircraft placed under the Program and is the Program manager. As a fractional program manager, Avantair places the aircraft in the fractional ownership program. The Program makes the aircraft in which they own interests available to other co-owners and allows the co-owners, such as Petitioning Creditors and others similarly situated, to utilize other Program aircraft provided by other co-owners. As Program members, Petitioning Creditors and others similarly situated are guaranteed a fixed number of hours of flight time.

8. Under the Management & Dry Lease Exchange Agreement, Avantair, as Manager, agreed to:

> (i) maintain the airworthiness certificate of the Aircraft in good standing, (ii) arrange for the inspection, maintenance, repair and overhaul of the Aircraft in accordance with maintenance programs and standards established by the manufacturer of the Aircraft and approved by the FAA, (iii) keep the Aircraft in good operating condition, and (iv) maintain the cosmetic appearance of the Aircraft in similar condition, except for ordinary wear and tear, as when delivered to Owner. Manager agrees to maintain the enrollment of the specified engines in an FAA approved engine program.

3

Further, under the Management & Dry Lease Exchange Agreement, Avantair agrees to "provide or cause to be provided at least one Pilot-in-Command and one Second-in-Command, commonly referred to as 'Flight Crew', professional trained and qualified pilots to operate each Program Aircraft furnished to Owner."

9. The Management & Dry Lease Exchange Agreement further provides: "Whenever possible, Manager [Avantair] shall schedule a Program Aircraft for Owner's Trip. If no Program Aircraft is available for a Trip, Manager will charter a comparable aircraft (i.e., one of similar charter value and shall have a similar capacity, amenities, mission capabilities and similar range as a Program Aircraft for use by Owner."

10. In late 2012, as a result of an FAA investigation of Avantair, Avantair was required to follow new safety protocols and standards and implement certain safety management systems. On information and belief it has not done so.

11. In June 2013, Avantair's fleet of Aircraft was grounded due in part to a business decision to do so and/or safety issues. In its Form 8-K filing with the SEC dated June 6, 2013, Avantair states:

> On June 6, 2013, the Company commenced visual inspections and records review of the time controlled parts on its aircraft by voluntarily ceasing flying each aircraft during the period until the inspection with respect to such aircraft is completed in order to ensure the highest degree of compliance and safety. An audit of the time controlled parts was already underway during scheduled maintenance checks as part of its new safety system; however, the Company was notified of an anonymous call questioning the adequacy of the system for monitoring time controlled parts. As such, it is the Company's policy to fully investigate such claims. The Company anticipates that it will begin release of aircraft back into service on a continual basis this week following the completion of these inspections.

12. In October and November 2012 the company shut down for almost a month. Then in June 2013, Avantair "furloughed," i.e., laid off, all or virtually all of its

4

employees, pilots, and staff. Officers and directors have resigned. Some have not been replaced. Since October 2012, Avantair has failed to adequately service participants in and under the Program. Since early 2103, and at least June 2013, Avantiar has not been providing any aviation services to its customers and owners under the Program or otherwise. On information and belief, Avantair is also no longer following or observing corporate formalities.

13. On June 26, 2013, Avantair filed a Form 8-K with the SEC which indicates:

On June 26, 2013, Avantair, Inc. (the "Company") commenced employee furloughs as the Company addresses liquidity issues and seeks alternative financing arrangements that it hopes will enable it to resume operations as quickly and efficiently as possible. In addition, on June 24, 2013 the Company received notice of service of a class action lawsuit filed by Heisman Square, L.L.C. in Oklahoma County District Court, Oklahoma.

On June 13, 2013, the Company also entered into a Forbearance Agreement with Midsouth Services, Inc. and Clear Aircraft, Inc. ("Lessor") related to past due lease payments for certain core fleet aircraft leased to the Company by the Lessor.

On June 18, 2013 and June 25, 2013, the Company was notified by the Lessor that it was in breach of the terms of the Forbearance Agreement and the Lessor has been exercising and will continue to exercise all rights and remedies available under the Forbearance Agreement and applicable law, including taking possession of its leased aircraft and aircraft engines.

On information and belief, as a result of its breach of the above referenced forbearance agreement the Lessor at issue has foreclosed its interest in all or substantially all of the aircraft involved.

14. On June 28, 2013, Avantair filed a Form 8-K with the SEC which indicates: "On June 28, 2013, Avantair, Inc. (the "Company") sent a letter to its fractional customers. A copy of the letter is furnished as Exhibit 99.1 to this Current Report on Form 8-K." The text of the referenced letter is as follows:

Dear Valued Owners:

As the company is considering its options with respect to its current situation and its future plans, we wanted to give our owner group a full picture of the current status of the company. Unfortunately, Avantair has recently faced significant liquidity issues. Our business model assumed efficiencies that never materialized and a pricing schedule based on those efficiencies. Over the past few months, we encountered issues that drained the company's working capital, and it became impossible to recover without reassessing our capital structure and business model. As our service was impacted and we were forced to temporarily ground our fleet, charter costs skyrocketed and our accounts receivable grew as it became increasingly difficult to collect on outstanding amounts due. This scenario is not sustainable and it is apparent that Avantair must restructure its affairs in order to emerge healthy and able to resume profitable operations. In addition to restructuring the balance sheet, we plan to revise our pricing to ensure profitable operations on a going forward basis. The following are key points of which we would like our owners to be aware:

- Your aircraft are on the ground at various maintenance locations and they are currently insured.
- We have been in contact with key suppliers and are pleased that most have expressed their ongoing support and encouragement. Key among them is Piaggio, which has offered to assist us in multiple ways.
- Over the next several days, the company will be validating the fees we charge and a new business model will be presented to the owner group. We are optimistic that a viable and sustainable business plan will encourage owners to support the new program. We also believe that with a restructured organization and new business model going forward, Avantair can emerge as a profitable business that is able to provide the highest levels of customer service.
- Finally, we are in discussions with certain of our vendors, lenders and other third parties to obtain the working capital needed to restructure and fund operations going forward.

We will be in touch over the next several days with a more detailed description of the company's business plan going forward. Customer service and satisfaction remains of the utmost importance to us as we work to implement a restructuring of our operations. We greatly appreciate your patience and continued loyalty as the company works through this difficult period.
Thank you,

Dave Haslett
President and Chief
Operating Officer[3]

15. Also on June 28, 2013, Avantair filed a Form 8-K with the SEC which indicates;

On June 27, 2013, director Stephanie Cuskley informed the Board of Directors (the "Board") of Avantair, Inc. (the "Company") that she was resigning from the Board effective immediately. Ms. Cuskley indicated that she was resigning from the Board for personal reasons, and not as a result of any disagreement with the Board or with the Company's management. The Board will reduce the size of the Board to seven members effective immediately until a replacement for Ms. Cuskley is found.

16. On July 10, 2013, Avantair filed a Form 8-K with the SEC which indicates:

"Effective July 10, 2013, David Haslett resigned his positions as President and Chief Operating Officer of Avantair, Inc. (the "Company") to pursue other opportunities. Mr. Haslett will remain with the Company on a consulting basis as needed."

17. Owners have been unable to access information about their specific Program aircraft. The location of aircraft is unknown and uncertain. Some aircraft under lease have repossessed by lessors without the knowledge or notice to Program owners. Owners have been advised that certain of the Program aircraft may not be operational as a result of unaddressed

---

[3] As noted herein, the promises made by Mr. Haslett to the owners have not materialized or been fulfilled. Insurance is not in place on aircraft. Aircraft cannot be located. Liens have been placed against aircraft. The owners did not accept the proffer restructure plan. There is no new capital available to operate the business going forward. There is no viable business to operate going forward. And, to make matters worse, less than 2 weeks later Mr. Haslett resigned as the President and COO of Avantair.

7

mechanical issues or cannibalization of the aircraft. The Program owners and pilots have set up discussion forums on the Internet which address the myriad of problems they have been experiencing in this regard.[4]

18. Petitioning Creditors Soldiers Creek Ranch, LLC and Joel Trammell, fractional owners of the Program aircraft bearing FAA Registration No. N102SL, were advised that insurance on their aircraft is set to expire on July 31, 2013, due to failure of Avantair to make required premium payments. Petitioning Creditor Soldiers Creek Ranch, LLC has advanced the necessary premiums to maintain insurance on the aircraft to cover its ownership interest, ground coverage only, for a period of 30 days.

19. With respect to the aircraft owned fractionally by Soldiers Creek Ranch, LLC and Joel Trammell, these Petitioning Creditors have learned, upon accessing the FAA registration and licensing records, that the ownership of their aircraft may have been place in the hands of an unknown party, ARTMA Rental, LLC.[5] This entity is not a fractional owner but appears to be a lessor. The FAA's records appear to show ARTMA Rental, LLC as holding the FAA license to the aircraft. The contracts between the parties indicate the owners are fractional. No notice of any other ownership has been provided. On information and belief, this is the same situation with other owners of Program aircraft. There is no information on the location of many of the Program aircraft. Owners have not been able to identify the location of their aircraft. Avantair has not provided any information on the location of Program aircraft.

---

[4] *See e.g.*, http://avantairowners.freeforums.net.

[5] *See* **Exhibit "3"** attached hereto.

20. Further, fractional owner and petitioning creditor Soldiers Creek Ranch, LLC has located its aircraft, alone with 9 other aircraft, in a hanger at Love Field, Dallas, Texas. Most of the aircraft are not in working condition. All mechanics engaged by Avantair have been furloughed and/or are no longer present due to not being paid. The aircraft appear to have been cannibalized for parts, engines appear to be missing, there are no maintenance records with the aircraft, the log books for the aircraft are not complete (e.g., there are no entries for how the aircraft came to be located at Love Field), is simply being stored. The hanger at issue was rented by Avantair and its office at the hanger is locked and has not been manned for some period of time. The owner of the hanger is incurring charges for storage and security for the aircraft.

21. Due to the failure of Avantair to pay for maintenance of Program aircraft, many Program aircraft have had mechanic's and materialmen's and other liens place against them and are being detained in hangers all across the United States. Since June 7, 2013, Avantair's entire fleet of jet aircraft has been grounded due to a business decision to do so or safety concerns.

22. On information and belief, the Department of Transportation and Federal Aviation Administration, which have regulatory authority over the industry in which Avantair operates, are currently investigating Avantair for possible civil and/or criminal violations.

23. On information and belief, a least a dozen lawsuits against Avantair have been filed by Program owners and customers across the United States.[6]

---

[6] A list of lawsuits is attached hereto as **Exhibit "4."**

24. Avantair is not operating in the ordinary course of business. In fact, on information and belief, partricularly since it has furlough its employees and pilots, it is not operating at all, save and except to collect receivables and liquidate certain of its property. All to the detriment of it Program aircraft owners and creditors.

### Discussion/Request for Relief

25. The above styled and referenced involuntary chapter 7 proceeding was commenced on July 25, 2013.

26. Section 303(g) of the Bankruptcy Code provides, in part, that "[a]t any time after the commencement of an involuntary case under chapter 7 of this title but before an order for relief in the case, the court, on request of a party in interest, after notice to the debtor and a hearing, and if necessary to preserve the property of the estate or to prevent loss to the estate, may order the United States trustee to appoint an interim trustee under section 701 of this title to take possession of the property of the estate and to operate any business of the debtor." 11 U.S.C. § 303(g).

27. As a general rule, an alleged debtor in an involuntary proceeding may continue to acquire or dispose of property until the court enters the order for relief. 11 U.S.C. § 303(f); *see In re DiLorenzo*, 161 B.R. 752, 754 (Bankr.S.D.N.Y.1993). However, a creditor may, during this "gap period," seek the appointment of an interim trustee to prevent the alleged debtor from misusing, dissipating, damaging, concealing, or converting its assets, including its business and financial records. 11 U.S.C. § 303( g); *see In re Levin*, 2011 WL 1469004 (Bankr.S.D.Fla.2011); *In re Alpine Lumber & Nursery*, 13 B.R. 977, 979 (Bankr.S.D.Cal.1981). The need for immediate appointment of an interim chapter 7 trustee has been found to exist in instances where it is necessary to protect and preserve property of the estate by preventing concealment, waste or

loss of assets by the alleged debtor, or preventing irreparable harm which would likely result during the gap period. *See e.g., In re DiLorenzo*, 161 B.R. at 754 n. 8.

28. In the present involuntary case, an interim chapter 7 trustee is necessary because, without limitation:

- the Debtor is no longer operating a business in the ordinary course;
- Avantair has no source of income;
- Avantair is not paying its debts and obligations as they come due;
- Avantair is not meeting its contractual obligations to owners and other customers under its aviation programs;
- all aircraft under the Program and control of Avantair have been grounded;
- aircraft and other business assets which are a part of Debtor's Program and business are not able to be located, have been misplaced, have been cannibalized, and have not been maintained;
- aircraft under the program and control of Avantair, as well as other business assets are not and may not be insured;
- all essential employees for business operations have been furloughed (laid off) by Avantair;
- all pilots under the Program have been furloughed;
- the *situs* and condition of aircraft under the Program is unknown and uncertain;[7]

---

[7] On its website, Avantair represents that: "Private aircraft are available 24 hours a day, seven days a week, 365 days a year, within hours of your call." This is no longer true.

- Avantair is not communication with and not providing any meaningful information to Program owners and other creditors with respect to their interests in Program aircraft;

- Avantair has breached significant and material provision of its Program contracts with owners and other credtiors;

- Avantair's fleet has been grounded;

- many of the Program aircraft have had liens placed against them because Avantair has failed to pay for repairs, maintenance and/or storage;

- Avantair is being investigated by the DOT and FAA for possible civil and/or criminal violations;

- numerous lawsuits have been filed against Avantair which have gone unaddressed by Avantair and are likely to lead to conflicting claims against the company; and

- given the foregoing, it is likely and highly probable, that there have been preferential and/or fraudulent transfers of assets to the detriment of Avantair's creditors and/or Avantair's failure to address the concerns of its owners and customers indicates its attempt to hinder, delay and/or defraud its owners, customers and other creditor.

29. Accordingly, the immediate appointment of an interim chapter 7 trustee prior to entry of an order for relief is essential and necessary to prevent irreparable harm which would likely result during the gap period.

30. Petitioning Creditors request such other and further relief, at law or in equity, to which they may be entitled under the circumstances.

Date: July 30, 2013

Respectfully submitted,

GLENN RASMUSSEN, P.A.

By: /s/ Robert B. Glenn
Robert B. Glenn
Florida Bar No. 159844

100 S. Ashley Drive, Suite 1300
Tampa, FL 33602
Telephone: (813) 229-3333
Facsimile: (813) 229-5946
Email: rglenn@glennrasmussen.com

LOCAL COUNSEL FOR PETITIONING CREDTIORS

AND

Bruce W. Akerly
Texas Bar No. 00953200
*[Application for admission pending]*
CANTEY HANGER LLP
1999 Bryan Street, Suite 3300
Dallas, Texas 75201
Telephone: (214) 978-4100
Facsimile: (214) 978-4150
Email: bakerly@canteyhanger.com

ATTORNEYS FOR PETITIONING CREDITORS

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed using the Court's CM/ECF filing system and served by electronic noticing or U.S. Mail on July 30, 2013, to:

| | |
|---|---|
| Avantair, Inc.<br>c/o Corporation Service Company,<br>Registered Agent<br>1201 Hays Street<br>Tallahassee, FL 32301-2525 | Office of the U.S. Trustee<br>Timberlake Annex<br>501 E. Polk Street, Suite 1200<br>Tampa, FL 33602 |
| Isaac M. Gabriel<br>Quarles & Brady LLP<br>One Renaissance Square<br>Two North Central Avenue<br>Phoenix, AZ 85004-2391<br>Counsel for BAR-S Investments, LLC | Ryan D. Barack<br>Michelle Erin Nadeau<br>Kwall, Showers & Barack, P.A.<br>133 N. Ft. Harrison Avenue<br>Clearwater, FL 33755<br>Counsel for Mary Peterson and Scott Piwinski |
| Philip V. Martino<br>Quarles & Brady LLP<br>101 E. Kennedy Boulevard<br>Suite 3400<br>Tampa, FL 33602<br>Counsel for BAR-S Investments, LLC | W. Steven Bryant<br>Brooke B. Chadeayne<br>Locke Lord LLP<br>600 Travis Street, Suite 2800<br>Houston, TX 77702<br>Counsel for Trey and Tonya Cook |

/s/ Robert B. Glenn
Robert B. Glenn

04791-00100 919193 v1