UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

AVANTAIR, INC.,

Debtor.

Case No. 13-09719-CPM
Chapter 7

_______________________________/

**NOTICE OF FILING**

Beth Ann Scharrer, as Chapter 7 Trustee for Avantair, Inc. ("Trustee"), by and through her undersigned counsel, hereby gives notice of filing the attached Settlement Agreement to Resolve, Release, and Bar Claims.

Date: February 25, 2016

_/s/ *Lynn Sherman*
Lynn Welter Sherman
Florida Bar No. 375616
ADAMS AND REESE LLP
101 E. Kennedy Blvd.
Suite 4000
Tampa, Florida 33602
Telephone: (813) 402-2880
Facsimile: (813) 402-2887
E-Mail: lynn.sherman@arlaw.com
Attorney for the Trustee

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing *Notice of Filing* has been furnished on this 25th day of February, 2016, via Electronic Mail to all parties receiving CM/ECF notification.

_/s/ *Lynn Sherman*
Lynn Welter Sherman

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re: CASE NO. 8:13-bk-09719-CPM
CHAPTER 7

AVANTAIR, INC.,

Debtor.
_______________________________________/

**SETTLEMENT AGREEMENT TO RESOLVE, RELEASE, AND BAR CLAIMS**

This Settlement Agreement and Release ("Settlement Agreement") is entered into by and among Beth Ann Scharrer, not individually but solely in her capacity as the Chapter 7 Trustee (the "Trustee") for the Bankruptcy Estate of Avantair, Inc. ("Avantair" or the "Debtor"), and the following former directors, officers, and employees of Avantair (collectively, the "Insureds"): A. Clinton Allen; Kevin Beitzel; Stephanie Cuskley; Richard DeWolfe; Arthur Goldberg; Barry Gordon; David Haslett; Bret Holmes; Laurel Jepson; Robert Lepofsky; Kevin McKamey; Tom Palmiero; Richard Pytak, Jr.; Allison Santo; Steven Santo; Carla Stucky; Stephen Wagman; and A. Lorne Weil. From time to time in this Settlement Agreement, the Trustee and the Insureds are referred to collectively as the "Parties."

WHEREAS, the Trustee is the duly appointed and acting Bankruptcy Trustee for the Bankruptcy Estate of Avantair as a result of Avantair being placed into an involuntary Chapter 7 Bankruptcy on July 25, 2013 (the "Petition Date"), the entry of an Order for Relief, and appointment of the Trustee as the Chapter 7 Trustee. The Debtor's Chapter 7 Bankruptcy is pending in the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court"), styled as *In re: Avantair, Inc.*, Case No. 8:13-bk-09719-CPM (the "Bankruptcy Main Case").

WHEREAS, the Insureds (with the exception of Allison Santo) have been named in one or more of the following lawsuits either threatened or filed (collectively, the "Lawsuits"):

(1) *Beth Ann Scharrer, Chapter 7 Trustee for the bankruptcy estate of the Debtor, Avantair, Inc. v. David Haslett, et al.*, to be filed as an Adversary Proceeding in the Bankruptcy Main Case or otherwise;

(2) *Mark Werner, et al. v. Avantair, Inc., et al.*, Case No. 13-007586, filed in the Court of the Sixth Judicial Circuit in and for Pinellas County, Florida;

(3) *Haugland Group, LLC, et al. v. Steven F. Santo, et al.*, Case No. 14-001034, filed in the Court of the Sixth Judicial Circuit in and for Pinellas County, Florida;

(4) *Long Holdings, Inc., et al. v. Global Aerospace, Inc., et al.*, Case No. 2014-cv-01930, filed in the United States District Court for the District of South Carolina;

(5) *Special Situations Fund III QP, L.P., et al. v. Steven F. Santo, et al.*, Case No. 8:14-cv-02611, filed in the United States District Court for the Middle District of Florida; and

(6) *Mary Peterson, et al. v. Avantair, Inc., et al.*, Case No. 8:13-cv-01683, filed in the United States District Court for the Middle District of Florida, and *Mary Peterson, et al. v. Beth Ann Scharrer, et al.*, Adversary Proceeding No. 13-ap-00807, filed in the United States Bankruptcy Court for the Middle District of Florida (collectively, the "Employee Action").

WHEREAS, National Union Fire Insurance Company of Pittsburgh, Pa. ("NUF") issued Policy Number 01-758-16-48 (the "NUF Policy") to Avantair.

WHEREAS, Allied World National Assurance Company ("Allied") issued Policy Number 0305-3471 (the "Allied Policy") to Avantair. From time to time in this Settlement Agreement, the NUF Policy and Allied Policy are referred to collectively as the "Policies." From time to time in this Settlement Agreement, NUF and Allied are referred to collectively as the "Insurers."

WHEREAS, on April 23 and 24, 2015, the Parties (with the exception of Allison Santo), along with the claimants in the Lawsuits, and the Insurers, mediated the various claims threatened or asserted against the Insureds in the Lawsuits (the "Mediation"). As a result of the Mediation and subsequent negotiations, the Parties have agreed that it is in the best interests of all involved to amicably resolve the Trustee's threatened claims and the claims asserted against the Insureds in the Lawsuits.

WHEREAS, the Parties entered into a Term Sheet (the "Term Sheet") setting forth the terms upon which the Parties agreed to resolve the threatened and pending claims against the Insureds in the Lawsuits. As part of the Term Sheet, the Parties agreed to work together to prepare this Settlement Agreement.

WHEREAS, pursuant to that Term Sheet, the Trustee obtained joinders from all claimants who participated in the Mediation, with the exception of counsel for the claimants in the Employee Action and Global Aerospace, Inc. The signatories to those joinders asserted in their respective joinders that, among other things, they (i) agree to accept a specific allocation of the Settlement Payment (defined below); (ii) support all of the terms contained in the Term Sheet; (iii) upon payment of claimant's allocation of the Settlement Payment and clearance of such funds, will release any and all claims against the Insureds and the Policies; and (iv) upon payment of claimant's allocation of the Settlement Payment and clearance of such funds, will dismiss with prejudice the Insureds from any suit pending against the Insureds.

WHEREAS, pursuant to that Term Sheet, certain Financial Disclosures were provided to the Trustee, subject to certain terms and conditions.

WHEREAS, the Parties wish to set forth the terms of their settlement in this Settlement Agreement as contemplated by the Term Sheet.

NOW, THEREFORE, in consideration of the mutual promises set forth herein, the Parties agree as follows:

1. **Recitals Incorporated.** The recitals and prefatory phrases and paragraphs set forth above are hereby incorporated in full and made a part of this Settlement Agreement.

2. **Effective Date.** Unless otherwise stated, the obligations, representations and warranties stated in this Settlement Agreement shall become effective on the date upon which all of the following conditions precedent have occurred (the "Effective Date"):

(A) the Bankruptcy Court has entered an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "9019 Order") approving this Settlement Agreement and Bar Order containing the exact language of the Bar Order set forth in paragraph 3 below; and

(B) the 9019 Order has not been reversed, stayed, modified or amended, and as to which (i) the time to appeal, petition for certiorari or move for reargument, rehearing or a new trial has expired and no appeal, petition for certiorari or motion for reargument, rehearing or a new trial, respectively, has been timely filed (which time period shall mean, with respect to motions to correct such 9019 Order under Rule 9024 of the Federal Rules of Bankruptcy Procedure, Rule 60 of the Federal Rules of Civil Procedure or otherwise, 14 days after the entry of such 9019 Order), or (ii) any appeal, any petition for certiorari or any motion for reargument, rehearing or a new trial that has been or may be filed has been resolved by the highest court (or any other tribunal having appellate jurisdiction over the 9019 Order) to which the 9019 Order was appealed or from which certiorari or reargument, rehearing or a new trial was sought, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing or a new trial shall have expired without such actions having been taken (upon satisfaction of each condition of Paragraph 2(A) and 2(B), the 9019 Order shall be referred to as the "Final Order").

For the avoidance of any doubt, the Trustee may, but under no circumstances shall be required to, appeal any 9019 Order which fails to approve the Settlement Agreement including the Bar Order.

3. **Trustee Release to Insureds and Insurers, Court Approval, Bar Order, and Agreement to Lift of Automatic Stay.** Upon occurrence of the Effective Date and bank clearance of the Settlement Payment (as defined below), the Trustee, solely on behalf of the Debtor and the Debtor's bankruptcy estate, remises, releases and forever discharges the Insureds and the Insurers (but solely as Insurers under the Policies and with respect to the Debtor and the Debtor's bankruptcy estate) of and from any and all claims, bad faith claims, extra contractual claims, sanctions, damages, demands, suits, debts, actions or causes of action of any kind, both known and unknown, held by the Trustee (solely on behalf of the Debtor and the Debtor's bankruptcy estate), the Debtor, and the Debtor's bankruptcy estate relating to any act or omission

by any Insured in their capacity as Executives or Employees (as defined in the NUF Policy), or in any way related to the Debtor or the Debtor's bankruptcy case, including, without limitation, claims sounding in contract, tort, and/or violations of any federal or state statute or regulation, whether at law or in equity, direct or derivative, suspected or unsuspected, that the Trustee ever had or may now or hereafter own, hold, have or claim to have by reason of any matter, cause or thing whatsoever from the beginning of the world to the Effective Date against any Insured, whether such claim was made or could have been made. In making this release to the Insureds and Insurers (but solely as Insurers under the Policies and with respect to the Debtor and the Debtor's bankruptcy estate), the Trustee understands and acknowledges that she may hereafter discover facts in addition to or different from those that are currently known or believed to be true with respect to the subject matter of this release, but agrees that she has taken that possibility into account in reaching this Settlement Agreement and that, notwithstanding the discovery or existence of any such additional or different facts, as to which she expressly assumes the risk, the Trustee fully, finally, and forever settles and releases any and all claims against the Insureds and Insurers (but solely as Insurers under the Policies and with respect to the Debtor and the Debtor's bankruptcy estate) as set forth herein.

Upon occurrence of the Effective Date and bank clearance of the Settlement Payment (as defined below), the Trustee, solely on behalf of the Debtor and the bankruptcy estate of the Debtor, further fully releases all claims, rights, or title to any coverage, claims, or proceeds under the Policies which the Debtor, its estate, or the Trustee claims to have now or may have in the future concerning the Policies and hereby gives the Insurers each a complete and full release under their respective Policies.

This Settlement Agreement is without prejudice to and nothing herein shall operate or be construed to operate as a compromise, impairment, release, waiver, or as having any effect whatsoever on any and all claims which have been or may be asserted by the Trustee against any third parties that are not the Insureds or the Insurers (but solely as Insurers under the Policies and with respect to the Debtor and the Debtor's bankruptcy estate).

An integral part of this Settlement Agreement is the Trustee's obligation to obtain a Final Order that contains a Bar Order in a form acceptable to the Insureds. For the purposes of this Settlement Agreement, the Bar Order shall mean an order of the Bankruptcy Court that:

> **permanently enjoins, restrains, and bars any person or entity, except governmental agencies, from filing, commencing, conducting, asserting, or continuing in any manner, directly, indirectly, or derivatively, any suit, action, claim, demand, or other proceeding (including, without limitation, any proceeding in any judicial, arbitral, administrative, or other forum) against any Insured based upon their acts or omissions in their capacity as Executives or Employees (as defined in the NUF Policy) of the Debtor or in any way related to the Debtor or its bankruptcy case, or against NUF or Allied in connection with the Insureds, the Debtor, or its bankruptcy case. The Bar Order shall not, however, impact, impair, or otherwise affect any rights that an Insured may have under the Policies or pursuant to any other arrangement among an Insured, NUF, and/or Allied.**

The Parties agree that upon the occurrence of the Effective Date of this Settlement Agreement, the automatic stay shall be lifted, to the extent it may be applicable, to permit the

Insurers to: (i) make the Settlement Payment set forth in Paragraph 5; (ii) pay Defense Costs, without further approval from the Bankruptcy Court, for the Insureds for any existing or future claims pursuant to the terms of the Policies after the Settlement Payment has been made to the Trustee as set forth herein; and (iii) pay, without review or approval by the Bankruptcy Court, any other payments for any other existing or future claims against the Insureds pursuant to the terms of the Policies after the Settlement Payment has been made to the Trustee as set forth herein.

The Trustee, solely on behalf of the Debtor and the bankruptcy estate of the Debtor, represents and warrants to the Insureds and Insurers that: (a) she has all right, title, and authority necessary to provide the release given in this Settlement Agreement; (b) she has not assigned, conveyed, sold, or transferred or attempted to assign, convey, sell, or transfer any of the claims released pursuant to this Paragraph 3, including, without limitation, any claims arising out of, based upon, or in any way involving any circumstance, event, fact, or transaction alleged or that could have been alleged against the Insureds or against the Insurers; (c) she has not commenced and is not prosecuting any arbitration or proceeding against the Insureds anywhere in the world other than the Bankruptcy Main Case identified herein; (d) she has not, and upon occurrence of the Effective Date and bank clearance of the Settlement Payment, will not in the future solicit or accept any assignment of a claim of *any kind* against the Insureds or Insurers (but solely as Insurers under the Policies and with respect to the Debtor and the Debtor's bankruptcy estate); and (e) upon occurrence of the Effective Date and bank clearance of the Settlement Payment, she will not request the Insureds or Insurers to defend, indemnify, or satisfy any claim(s) or award(s) made against any Insured.

4. **The Insureds Release to the Trustee, the Debtor, and the Debtor's Bankruptcy Estate.** Upon occurrence of the Effective Date and bank clearance of the Settlement Payment (as defined below), the Insureds remise, release, and forever discharge the Trustee (solely on behalf of the Debtor and the Debtor's bankruptcy estate), the Debtor, and the Debtor's bankruptcy estate of and from any and all claims, sanctions, extra contractual claims, damages, demands, suits, debts, actions or causes of action of any kind relating to the Debtor, the Debtor's bankruptcy estate, the Bankruptcy Main Case, or the claims asserted by the Trustee against any Insured, including, without limitation, claims sounding in contract, tort, violations of any federal or state statute or regulation, contribution, indemnity, and/or any and all claims against the bankruptcy estate, including any and all pre- or post-petition claims against the estate of the Debtor, and any and all such claims, to the extent they exist or are claimed to exist, including a claim against the Debtor's bankruptcy estate for payment of the Settlement Payment pursuant to 11 U.S.C. § 502(d) and (h), whether at law or in equity, direct or derivative, known or unknown, or suspected or unsuspected, that the Insureds may now have or may have in the future by reason of any matter, cause or thing whatsoever from the beginning of the world to the Effective Date, whether such claim was made or could have been made; provided, however that nothing herein shall operate to release the secured claims listed on **Exhibit A** that are to be assigned to the Trustee for the benefit of the Debtor's bankruptcy estate. In making this release to the Trustee (solely on behalf of the Debtor and the Debtor's bankruptcy estate), the Debtor, and the Debtor's bankruptcy estate, the Insureds understand and acknowledge that they may hereafter discover facts in addition to or different from those that are currently known or believed to be true with respect to the subject matter of this release, but agree that they have taken that possibility into account in reaching this Settlement Agreement and that,

notwithstanding the discovery or existence of any such additional or different facts, as to which the Insureds expressly assume the risk, the Insureds fully, finally, and forever settle and release any and all claims against the Trustee (solely on behalf of the Debtor and the Debtor's bankruptcy estate), the Debtor, and the Debtor's bankruptcy estate as set forth herein.

The Insureds represent and warrant to the Trustee that: (a) they have all right, title, and authority necessary to provide the release given in this Settlement Agreement; (b) they have not assigned, conveyed, sold, or transferred or attempted to assign, convey, sell, or transfer any of the claims released pursuant to this Paragraph 4; (c) they have not commenced and are not prosecuting any arbitration or proceeding against the Trustee (on behalf of the Debtor and the Debtor's bankruptcy estate), the Debtor, or Debtor's bankruptcy estate anywhere in the world; (d) they have not, and upon occurrence of the Effective Date and bank clearance of the Settlement Payment, will not in the future solicit or accept any assignment of a claim of *any kind* against the Trustee, the Debtor, or Debtor's bankruptcy estate; and (e) upon occurrence of the Effective Date and bank clearance of the Settlement Payment, they will not request the Trustee, the Debtor, or Debtor's bankruptcy estate to defend, indemnify, or satisfy any claim(s) or award(s) made against any Insured.

Notwithstanding anything to the contrary contained herein: (i) all claims and defenses held by LW Air I LLC, LW Air II LLC, LW Air III LLC, LW Air IV LLC, and LW Air V LLC (the "LW Air Entities") against the Trustee (solely on behalf of the Debtor and the Debtor's bankruptcy estate), the Debtor, and the Debtor's bankruptcy estate, or any other party are not being released or otherwise impacted by the terms of this Settlement Agreement and are preserved; and (ii) all claims and defenses of the Trustee (solely on behalf of the Debtor and the Debtor's bankruptcy estate), the Debtor, and the Debtor's bankruptcy estate against the LW Air Entities are not being released or otherwise impacted by the terms of this Settlement Agreement and are preserved.

Also, notwithstanding anything to the contrary contained herein, Laurel Jepson is not releasing the claims set forth in the proofs of claim she has filed in the Bankruptcy Main Case. All claims and defenses of the Trustee (solely on behalf of the Debtor and the Debtor's bankruptcy estate), the Debtor, and the Debtor's bankruptcy estate against Jepson are not being released or otherwise impacted by the terms of this Settlement Agreement and are preserved.

5. **Settlement Payment.** For and in consideration of each of the terms set forth herein, the Insurers shall pay on the Insureds' behalf the aggregate sum of EIGHT MILLION DOLLARS AND 00/100 ($8,000,000.00) to the Trustee (the "Settlement Payment"). The Insurers shall fund the Settlement Payment as follows: NUF shall pay the sum of SIX MILLION DOLLARS AND 00/100 ($6,000,000.00), and Allied shall pay the sum of TWO MILLION DOLLARS AND 00/100 ($2,000,000.00). NUF and Allied will pay their respective shares of the Settlement Payment in the form of checks for good and collectable funds made payable to "Beth Ann Scharrer, Chapter 7 Trustee of the Avantair Bankruptcy Estate," which checks shall be tendered to the Trustee's counsel, Robert F. Elgidely, Esq., at his law office address: Genovese Joblove & Battista, P.A., 200 East Broward Boulevard, Suite 1110, Fort Lauderdale, FL 33301 via Federal Express. NUF and Allied shall pay their respective shares of the Settlement Payment within five (5) business days of the Effective Date of this Settlement

Agreement. The Parties understand that no Insured is obligated to make all or part of the Settlement Payment.

6. **<u>Releases and Dismissals of Claims by Claimants Signing Joinders</u>.** The Trustee will obtain from the claimants who signed joinders pursuant to the Term Sheet releases of any and all claims against the Insureds and Insurers, as well as stipulations of dismissal with prejudice of any claims asserted against any Insured in any pending action, proceeding, or suit. Such releases and stipulations of dismissal, which shall be available for inspection by the Insureds and Insurers upon receipt by the Trustee and which shall become effective upon occurrence of the Effective Date and bank clearance of the Settlement Payment, shall be held by the Trustee in escrow until such time as the Trustee has funded the claimants' respective shares of the Settlement Payment. The Trustee shall fund the claimants' respective shares of the Settlement Payment within five (5) business days of bank clearance of the Settlement Payment. Upon funding the claimants' respective shares of the Settlement Payment, the Trustee will deliver to the Insureds and Insurers the releases described in this Paragraph 6 and will make reasonable efforts to cause the claimants to file the stipulations of dismissal described in this Paragraph 6 in the jurisdictions where the various actions, proceedings, or suits are pending.

7. **<u>Additional Consideration to Estate</u>.** Upon occurrence of the Effective Date and bank clearance of the Settlement Payment: (a) the secured claims listed on **Exhibit A** shall be assigned to the Trustee for the benefit of the bankruptcy estate of the Debtor; and (b) the unsecured claims (or unsecured portion of the claims) listed on **Exhibit B** shall receive no distribution whatsoever in the Bankruptcy Main Case.

8. **<u>Non-Approval</u>.** In the event the Settlement Agreement is not approved by the Bankruptcy Court or the Effective Date does not occur, nothing herein shall be deemed a representation or admission by any Party as to any issue, and this Settlement Agreement will be deemed null and void, including the validity of any and all instruments executed by any of the Parties for its performance and implementation prior to its approval and the Effective Date, provided, however, that nothing herein shall operate or be construed to operate as deeming null and void or having any effect whatsoever on that certain Tolling Agreement executed by and among the Parties, which shall remain valid and binding on the Parties. The Parties shall be returned to the *status quo* each Party held prior to entry into this Settlement Agreement.

9. **<u>No Admissions</u>.** This Settlement Agreement is entered into for settlement and compromise of disputed claims and shall never be treated as an admission by any Party of any liability whatsoever or as an admission by any Party of any violation of the rights of any other Party or person, or the violation of any law, statute, regulation, duty or contract whatsoever. By entering into this Settlement Agreement, the Parties do so solely to avoid the inconvenience, expense, and uncertainty of further proceedings and expressly disclaim any liability to any other party or person.

10. **<u>Attorneys' Fees and Costs</u>.** Each Party will bear its own expenses, including any costs or attorneys' fees incurred in connection with the negotiation and execution of this Settlement Agreement, the Trustee's asserted claims against the Insureds, and the Bankruptcy Main Case, except that the Insureds' Defense Costs are reimbursable according to the terms of

the Policies. Subject to the restrictions and limitations of Paragraph 14 below, in the event that a Party hereto initiates a lawsuit or other proceeding to enforce the provisions of this Settlement Agreement or asserts the provisions of this Settlement Agreement as a defense to a lawsuit or other proceeding brought by any other Party, however, the Party prevailing in such lawsuit or civil proceeding shall be paid, in addition to all other sums that may be required to be paid, a reasonable sum for the prevailing Party's attorneys' fees and costs of action, including paralegal fees and any fees and costs on appeal.

11. **Notices**. All notices or information to be provided under this Settlement Agreement shall be sent to the following:

| | |
|---|---|
| a. The Trustee: | Robert F. Elgidely, Esq.<br>David C. Cimo, Esq.<br>Marilee A. Mark, Esq.<br>GENOVESE JOBLOVE & BATTISTA, P.A.<br>200 East Broward Boulevard, Suite 1110<br>Fort Lauderdale, FL 33301<br>Phone: 954-453-8000<br>Fax: 954-453-8010<br>Email: relgidely@gjb-law.com<br>Email: dcimo@gjb-law.com<br>Email: mmark@gjb-law.com<br><br>Lynn Welter Sherman, Esq.<br>ADAMS AND REESE LLP<br>Bank of America Plaza<br>101 East Kennedy Boulevard, Suite 4000<br>Tampa, Florida 33602<br>Tel: 813.402.2880<br>Email: lynn.sherman@arlaw.com |
| b. David Haslett, Bret Holmes, Tom Palmiero, Richard Pytak, Jr., Carla Stucky, and Stephen Wagman: | Donald R. Kirk, Esq.<br>Joseph W. Swanson, Esq.<br>CARLTON FIELDS JORDEN BURT, P.A.<br>P.O. Box 3239<br>Tampa, Florida 33601<br>Tel: 813.223.7000<br>Email: dkirk@carltonfields.com<br>Email: jswanson@carltonfields.com |
| c. Kevin Beitzel, Laurel Jepson, and Kevin McKamey: | Andrew P. Gold, Esq.<br>Steven R. Wirth, Esq.<br>AKERMAN LLP<br>350 East Las Olas Boulevard, Suite 1600<br>Ft. Lauderdale, Florida 33301<br>Tel: 954.463.2700<br>Email: andrew.gold@akerman.com |

Email: steven.wirth@akerman.com

| | |
|---|---|
| d. A. Clinton Allen, Stephanie Cuskley, Richard DeWolfe, Arthur Goldberg, Barry Gordon, and Robert Lepofsky: | R. Robert Popeo, Esq.<br>Nancy D. Adams, Esq.<br>John F. Sylvia, Esq.<br>MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC<br>One Financial Center<br>Boston, Massachusetts 02111<br>Tel: 617.542.6000<br>Email: RRPopeo@mintz.com<br>Email: NDAdams@mintz.com<br>Email: JFSylvia@mintz.com |
| e. A. Lorne Weil: | Robert T. Schmidt, Esq.<br>Gregory G. Plotko, Esq.<br>KRAMER LEVIN NAFTALIS & FRANKEL LLP<br>1177 Avenue of the Americas<br>New York, New York 10036<br>Tel: 212.715.9100<br>Email: rschmidt@kramerlevin.com<br>Email: gplotko@kramerlevin.com |
| f. Steven Santo: | Marcos E. Hasbun, Esq.<br>Nathan M. Berman, Esq.<br>ZUCKERMAN SPAEDER LLP<br>101 E. Kennedy Boulevard, Suite 1200<br>Tampa, Florida 33602<br>Tel: 813.221.1010<br>Email: mhasbun@zuckerman.com<br>Email: nberman@zuckerman.com |
| g. Allison Santo: | 4987 59th Avenue South<br>Saint Petersburg, Florida 33715 |

12. **Entire Agreement.** Other than the Term Sheet, this Settlement Agreement constitutes the only existing and binding agreement of settlement among the Parties, and the Parties acknowledge that there are no other warranties, promises, assurances or representations of any kind, express or implied, upon which the Parties have relied in entering into this Settlement Agreement, unless expressly set forth herein. To the extent that there are any inconsistencies and/or conflicts between the Term Sheet and this Settlement Agreement, the terms of this Settlement Agreement shall control. This Settlement Agreement shall not be modified except by written agreement signed by the Party against whom modification is sought.

13. **Parties Affected.** This Settlement Agreement shall inure to the benefit of the Parties and their officers, directors, shareholders, employees, partners, attorneys, professionals, affiliates, representatives, spouses, trustees, heirs, successors, and assigns.

14. **Governing Law/Forum Selection.** The Parties agree that the Bankruptcy Court shall have continuing jurisdiction to enforce the terms of this Settlement Agreement and the Parties expressly consent to the exercise of personal jurisdiction over them for that limited purpose. This Settlement Agreement shall be governed by, and construed and enforced in accordance with the laws of the State of Florida, without regard to its conflict of law principles.

15. **Acknowledgment of Terms.** The Parties have read and understand the terms of this Settlement Agreement, have consulted with their respective counsel, and understand and acknowledge the significance and consequence of each such term. No Party is relying on information provided by or from the other Party in entering this Settlement Agreement and there are no duties of disclosure by either Party to the other. This Settlement Agreement was executed after arm's length negotiations between the Parties and their respective counsel, and reflects the conclusion of the Parties that this Settlement Agreement is in the best interests of the Parties. Each Party represents and warrants that the person executing this Settlement Agreement on his, her, or its behalf has all authority and legal right to do so and separately acknowledges and represents that this representation and warranty is an essential and material provision of this settlement and shall survive execution of this Settlement Agreement.

16. **Advice of Counsel.** The Parties acknowledge that they have been represented by counsel of their own choice in the negotiations leading up to the execution of this Settlement Agreement, have read this Settlement Agreement, and have had the opportunity to receive an explanation from legal counsel regarding the legal nature and effect of same. The Parties have had the Settlement Agreement fully explained to them by their respective counsel and understand the terms and provisions of this Settlement Agreement and its nature and effect. The Parties further represent that they are entering into this Settlement Agreement freely and voluntarily, relying solely upon the advice of their own counsel, and not relying on the representation of any other Party or of counsel for any other Party.

17. **Severability.** If any term of this Settlement Agreement is deemed unenforceable, void or against public policy by a Court of competent jurisdiction, that term shall be severed without affecting the remainder of this Settlement Agreement.

18. **Neutral Interpretation.** In the event any dispute arises among the Parties with regard to the interpretation of any term of this Settlement Agreement, all of the Parties shall be considered collectively to be the drafting party and any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall be inapplicable.

19. **Execution of Documents.** This Settlement Agreement may be executed in counterparts, that is, all signatures need not appear on the same copy and execution of counterparts shall have the same force and effect as if the Parties had signed the same instrument. All such executed copies shall together constitute the complete Settlement Agreement. The Parties may execute this Settlement Agreement and create a complete set of

signatures by exchanging PDF copies of the executed signature pages. Signatures transmitted in PDF format shall have the same effect as original signatures.

20. **Divisions and Headings.** The divisions of this Settlement Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Settlement Agreement.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement, as follows:

BETH ANN SCHARRER, AS CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF AVANTAIR, INC.

Dated: ____________________________ ________________________________________

A. CLINTON ALLEN

Dated: ____________________________ ________________________________________

KEVIN BEITZEL

Dated: ____________________________ ________________________________________

STEPHANIE CUSKLEY

Dated: ____________________________ ________________________________________

RICHARD DeWOLFE

Dated: ____________________________ ________________________________________

ARTHUR GOLDBERG

Dated: ____________________________ ________________________________________

BARRY GORDON

Dated: ____________________________ ________________________________________

DAVID HASLETT

Dated: ______________________________ ________________________________________

BRET HOLMES

Dated: ______________________________ ________________________________________

LAUREL JEPSON

Dated: ______________________________ ________________________________________

ROBERT LEPOFSKY

Dated: ______________________________ ________________________________________

KEVIN McKAMEY

Dated: ______________________________ ________________________________________

TOM PALMIERO

Dated: ______________________________ ________________________________________

RICHARD PYTAK, JR.

Dated: ______________________________ ________________________________________

ALLISON SANTO

Dated: ______________________________ ________________________________________

STEVEN SANTO

Dated: ____________________________ ______________________________________

CARLA STUCKY

Dated: ____________________________ ______________________________________

STEPHEN WAGMAN

Dated: ____________________________ ______________________________________

A. LORNE WEIL

Dated: ____________________________ ______________________________________

# **EXHIBIT A**

The secured claims of Robert Lepofsky, A. Clinton Allen, Lawson Allen, Richard DeWolfe, Arthur Goldberg, Barry Gordon, and A. Lorne Weil, as set forth in Claim No. 605-1 and 601-1.

**EXHIBIT B**

| Claimant | Claim Number |
|---|---|
| David Haslett | 330-1 |
| | 660-1 |
| Kevin McKamey | 586-1 |
| | 589-1 |
| | 615-1 |
| Stephen Wagman | 332-1 |
| Bret Holmes | 328-1 |
| Tom Palmiero | 331-1 |
| | 583-1 |
| A. Clinton Allen | 599-1 |
| Richard DeWolfe | 602-1 |
| | 556-1[1] |
| Barry Gordon | 601-1 |
| | 605-1 |
| Robert Lepofsky | 604-1 |
| A. Lorne Weil | 624-1 |
| | 647-1 |
| Steven Santo | 329-1 |
| | 611-1 |
| Arthur Goldberg | 606-1 |
| Allison Santo | 579-1 |

[1] Provided, however that Richard DeWolfe shall be entitled to receive any funds he may be entitled to receive as a fractional owner of N173SL pursuant to the Order (i) Granting Motion To Approve Compromise of Controversy with Fractional Owners of N173SL, (ii) Granting Motion for Approval of Sale Free and Clear of Liens and to Approve Sale and Bid Procedures N173SL and (iii) Authorizing the Retention of Starman Brothers Auctions to Sell N173SL (Doc. No. 1569) as a result of the sale of N173SL.