ORDERED.

**Dated: November 18, 2016**

Catherine Peek McEwen
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

AVANTAIR, INC.,

Debtor.

Case No. 13-09719-CPM
Chapter 7

______________________________/

**ORDER GRANTING TRUSTEE'S MOTION TO APPROVE COMPROMISE OF CONTROVERSY WITH GLOBAL AEROSPACE, INC. AND BAR ORDER AND MOTION TO APPROVE COMPROMISE OF CONTROVERSY WITH CERTAIN FRACTIONAL OWNERS**
**(Docs. 1997 and 2104)**

THIS CASE came before the Court for hearing on June 22, 2016 at 9:30 a.m., August 3, 2016 at 1:30 p.m., October 20, 2016 at 1:30 p.m., and November 16, 2016 at 1:30 p.m. (collectively, the "Hearing") to consider approval of the following motions filed by Beth Ann Scharrer, as Chapter 7 Trustee ("Trustee") for Avantair, Inc. (the "Debtor"): Motion of Chapter 7 Trustee Beth Ann Scharrer to Approve Settlement and Compromise of Controversy with the Former Officers, Directors, and Employees of Avantair, Inc. and Request for Entry of Bar Order (Doc. 1787) (the "Director and Officer Motion to Compromise"); Amended Motion of Chapter 7

Trustee Beth Ann Scharrer to Approve Settlement and Compromise of Controversy with Global Aerospace, Inc. and Request for Entry of Bar Order (Doc. 1997) (the "Global Motion to Compromise"); and Amended Motion of Chapter 7 Trustee Beth Ann Scharrer to Approve Settlement and Compromise of Controversy with Certain Fractional Owners (Doc. 2104) (the "CFO Motion to Compromise"). By separate order entered contemporaneously herewith, the Court has approved the Director and Officer Motion to Compromise. The Certain Fractional Owners filed an objection to the Global Motion to Compromise (Doc. 1999) (the "CFO Objection"), which has been resolved pursuant to the terms of the CFO Compromise. At the Hearing, counsel for the Trustee and counsel for the Employee Class announced that the objection to the CFO Motion to Compromise filed by the Employee Class (Doc. 2117) (the "Employee Objection") had been resolved and would be withdrawn on the terms announced on the record at the Hearing, which are incorporated in this Order. The Court, having reviewed the Director and Officer Motion to Compromise, the Global Motion to Compromise, the CFO Motion to Compromise, the record in the bankruptcy case, the unrebutted proffers made by counsel at the Hearing, and being otherwise duly advised in the premises, and for the reasons stated on the record, which shall constitute the findings of the Court, accordingly it is:

**ORDERED AS FOLLOWS**:

1. The Global Motion to Compromise and CFO Motion to Compromise are GRANTED.

2. Collectively, the settlements that are the subject of the Director and Officer Motion to Compromise; Global Motion to Compromise; CFO Motion to Compromise; and the Joint Motion for Entry of an Order: (I) Approving Settlement and Compromise of Controversy with the Former Employees of Avantair, Inc. pursuant to Bankruptcy Rule 9019; (II) Granting

cpm

Preliminary Approval of Class Action Settlement; (III) Conditionally Certifying Class For Settlement Purposes Only; (IV) Approving the Form and Manner of Service of Class Notice; (V) Scheduling A Final Approval Hearing; and (VI) Granting Related Relief (Doc. 2017) and the order thereon (Doc. 2085) as modified in this order, together satisfy the standards set forth in *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir.1990), for approval of settlements under Bankruptcy Rule 9019, and the standards for entry of the requested bar order set forth in *Munford v. Munford, Inc.* (*Matter of Munford, Inc.*), 97 F.3d 449 (11th Cir. 1996).

3. The Employee Objection to the CFO Motion to Compromise was withdrawn in open Court on the following terms:

(a) The Employee Class shall be paid, in addition to the $245,000.00 previously allocated to be paid to the Employee Class under the Director and Officer Motion to Compromise, the sum of $200,000.00 from the proceeds of the Director and Officer Motion to Compromise, Global Motion to Compromise, and CFO Motion to Compromise, which shall be funded as set forth on Exhibit "A" hereto.

(b) The Motion to Decertify the Employee Class and/or Disqualify Class Counsel for Breach of the Settlement Agreement (Doc. 2118) was withdrawn in open Court, and the Certain Fractional Owners' Motion to Set Aside Order Granting Final Approval of Class Action Settlement, Certifying Class for Settlement Purposes Only, Appointing Class Representative and Class Counsel, and Granting Related Relief (Doc. 2119) was withdrawn in open Court.

4. The Trustee is authorized and directed to immediately disburse the proceeds from the settlement that is the subject of the Global Motion to Compromise as set forth on Exhibit "B" hereto. The disbursements set forth on Exhibit "B" hereto reflect and already take into account the contributions to the Employee Class set forth on Exhibit "A" hereto (i.e., neither this Order nor any agreement calls for further deduction of the disbursements set forth on Exhibit "B" hereto).

5. Effective upon the making of the Settlement Payment (as defined in the Settlement Agreement attached to this Order as Exhibit "C"):

> Global Aerospace, Inc., American Alternative Insurance Corporation, Mitsui Sumitomo Insurance Company of America, National Indemnity Company, Tokio Marine & Nichido Fire Insurance Company, Ltd. (USB), and all reinsurers and insurers thereof, and all of their predecessors, successors, assigns, affiliates and related entities, insurers, attorneys, trustees, officers, directors, agents, employees and heirs (collectively, the "Global Parties") are hereby remised, released, and forever discharged of and from any and all past, present and future claims, bad faith claims, contracts, insurance policies, extra contractual claims, duties, reckonings, controversies, agreements, promises, responsibilities, covenants, accounts, sanctions, torts, violations of any statute or regulation, statutory liability, administrative, judicial or arbitral proceedings, damages, demands, suits debts, actions or causes of action of any kind, nature or description, direct or indirect, contingent or absolute, both known and unknown, in law or equity, in any way related to or arising out of the Debtor, Avantair, Inc., the Trustee, this bankruptcy case, the Haugland Group Plaintiffs[1], any Insured, any aircraft, component or thing of any kind and nature insured under the ManagAir Policy, and any person or entity that is an Insured under the ManagAir Policy. Without limiting the scope of the foregoing, the Bar Order as stated above includes and applies to any claims arising out of, connected with, or in any way relating to the ManagAir Policy, including without limitation the claims asserted by the Competing Claimants, to any claims arising out of, connected with, or in any way relating to the Schumacher Adversary Proceeding, to any claims arising out of, connected with, or in any way relating to the SC Action, to any claims arising out of, connected with, or in any way relating to that certain action pending in the United States District Court for the Central District of California, styled Irwin Helford Family Trust, et al. v. Global Aerospace, Inc. et al., to any claims asserted by the Trustee on behalf of the bankruptcy estate of the Debtor, to any claims that any person or entity or Insured ever had or may now or hereafter own, hold, have or claim to have by reason of any

[1] Capitalized terms that are not defined in this Order shall have the meaning ascribed to such terms in the Global Aviation Mediation Term Sheet (Doc. 1997-1).

matter, cause or thing whatsoever from the beginning of the world to the date of this Order, whether under the law of Florida or any other state, territory, commonwealth or possession of the United States, or the laws of the United States of America or any other nation, or any treaty entered into amongst any of them. Without limiting in any way the scope of the foregoing, this Order includes a full policyholders' release of all claims and demands for any benefits under the ManagAir Policy, or any predecessor policy, including but not limited to any coverage rights, any claim for first party benefits, any right to compensation for physical damage losses, property damage losses, personal injury or bodily injury benefits, any right to defense or indemnity against third party claims, or any other benefits or coverage of any nature whatsoever under the ManagAir Policy, or any predecessor policy. Provided, however, that this Order shall not release or bar any obligations of Global Aerospace under the ManagAir policy for any third party N168SL Claims arising from the crash of N168SL. Global Aerospace will continue to defend any N168SL third party claims arising from the crash of N168SL, pursuant to the terms and conditions of the ManagAir Policy, and Global Aerospace will indemnify the Debtor against any recovery on third party N168SL claims by way of settlement or judgment against Avantair, Inc. pursuant to the terms and conditions of the ManagAir Policy.

6. The Trustee is authorized to take all actions deemed necessary and appropriate to consummate the transactions contemplated under the settlement agreements attached to the Global Compromise Motion, the CFO Compromise Motion, and the settlement of the Employee Objection set forth in this Order, including without limitation execution of a formal Settlement Agreement in the form attached hereto as Exhibit "C."

7. The Court reserves exclusive jurisdiction to enter any orders necessary or appropriate to effectuate the terms of the compromises approved herein, and to enforce the compromises and Bar Order approved by this Order.

Attorney Lynn Welter Sherman is directed to serve a copy of this order on all non CM/ECF users and file proof of service within three (3) days of entry of the order.

| Contributor | Amount |
|---|---|
| | |
| Fuller Entities[1] | $10,000.00 |
| Certain Fractional Owners[2] | $7,500.00 |
| Long Holdings Plaintiffs[3] | $57,500.00 |
| Special Situations Fund Plaintiffs[4] | $90,000.00 |
| Haugland Group Plaintiffs[5] | $35,000.00 |
| TOTAL | $200,000.00 |

[1] As defined in the CFO Objection Mediation Term Sheet (Doc 2104-1), from the proceeds of the Global Aerospace, Inc. settlement.

[2] As defined in the CFO Objection Mediation Term Sheet (Doc 2104-1), from the proceeds of the Global Aerospace, Inc. settlement.

[3] As defined in the Motion of Chapter 7 Trustee Beth Ann Scharrer to Approve Settlement and Compromise of Controversy with the Former Officers, Directors, and Employees of Avantair, Inc. and Request for Entry of Bar Order (Doc. 1787), and to be funded from the proceeds of that settlement.

[4] As defined in the Motion of Chapter 7 Trustee Beth Ann Scharrer to Approve Settlement and Compromise of Controversy with the Former Officers, Directors, and Employees of Avantair, Inc. and Request for Entry of Bar Order (Doc. 1787), and to be funded from the proceeds of that settlement.

[5] As defined in the Motion of Chapter 7 Trustee Beth Ann Scharrer to Approve Settlement and Compromise of Controversy with the Former Officers, Directors, and Employees of Avantair, Inc. and Request for Entry of Bar Order (Doc. 1787), and to be funded from the proceeds of that settlement.

**EXHIBIT A**

| DISBURSEMENTS[1] | | |
|---|---|---|
| | | |
| CCA | | $ 18,750.00 |
| N130SL Plaintiffs | | $ 63,750.00 |
| Fuller Entities | | $ 190,000.00 |
| CFO Distribution | | $ 2,000,000.00 |
| Employee Qualified Settlement Fund (Doc. 2017-1) | | $ 17,500.00 |
| TOTAL DISBURSEMENTS | | $ 2,290,000.00 |

[1] Capitalized terms that are not defined in this Exhibit shall have the meaning ascribed to such terms in the CFO Objection Mediation Term Sheet (Doc. 2104-1).

**EXHIBIT B**

**SETTLEMENT AGREEMENT TO RESOLVE, RELEASE, AND BAR CLAIMS**

This Settlement Agreement to Resolve, Release, and Bar Claims ("Settlement Agreement") is entered into by and between Beth Ann Scharrer, as Chapter 7 Trustee for Avantair, Inc. (the "Trustee") and Global Aerospace, Inc. ("Global Aerospace) (Global Aerospace and the Trustee are, collectively, the "Parties"), effective as of April 25, 2016.

WHEREAS, On August 16, 2013, the Bankruptcy Court entered an Order for Relief against the Debtor under Chapter 7 of the Bankruptcy Code.

WHEREAS, the Trustee (on behalf of the Debtor), the Competing Claimants, the Haugland Group Plaintiffs, and other Insureds, allege they have made claims under and against the ManagAir Policy. The status of the alleged claims and viability thereof are currently in question or dispute.

WHEREAS, on April 7, 2014, Global Aerospace filed its *Motion for Determination that Trustee is the Real Party-in-Interest for Submitting and Managing of Alleged Claims for Benefits under the ManagAir Policy Issued Through Global Aerospace, Inc.* (the "Motion for Determination of Real Party-in-Interest").

WHEREAS, the Bankruptcy Court entered the Stipulated Order on the Motion for Determination of Real Party-in-Interest.

WHEREAS, pursuant to the Stipulated Order, mediations were held before Meditator Ron Shapiro on September 15, 2015 and Mediator Hon. Leif Clark on October 28, 2015. The Trustee, Global Aerospace, and each of the Competing Claimants participated in the mediations. Although a settlement was not reached on either day, pursuant to the mediation protocol set forth in the Stipulated Order, negotiations have



**EXHIBIT C**

continued between the Trustee and Global Aerospace, and on April 25, 2016, those negotiations resulted in a settlement on the terms and conditions set forth in the Global Aerospace Mediation Term Sheet.

WHEREAS, on May 31, 2016, the Trustee filed the Global Settlement Motion, in which the Trustee seeks the entry of an order approving the Global Compromise.

WHEREAS, On June 21, 2016, the Certain Fractional Owners filed the CFO Objection. The CFO Objection, among other things, objects to both the total amount of the Global Compromise and the Trustee's proposed allocation of the proceeds of the Global Compromise, as set forth in the Global Settlement Motion.

WHEREAS, the Trustee filed her *Trustee's Motion for Order Requiring Mediation of CFO Objection and to Continue Hearing on Motion for Global Aerospace, Inc. to Enforce the Automatic Stay and for Sanctions Against Certain Fractional Owners of N162SL and Their Counsel* ( the "Trustee's Mediation Motion") (Doc. No. 2076).

WHEREAS, at the hearing on September 19, 2016, the Bankruptcy Court granted the Trustee's Mediation Motion.

WHEREAS, the Certain Fractional Owners, the Trustee, and Global Aerospace participated in a further mediation before the Hon. Leif M. Clark on October 11, 2016.

WHEREAS, at the October 11, 2016 mediation, Global Aerospace agreed to increase the Settlement Payment to be made pursuant to the Global Aerospace Mediation Term Sheet from $1,850,000.00 to $2,050,000.00.

## DEFINITIONS

1. "Bankruptcy Case" shall mean the Chapter 7 bankruptcy case for the Debtor that is presently pending in the Bankruptcy Court (Case. 8:13-bk-09719-CPM).

2. "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, in which the Bankruptcy Case is pending.

3. "Bar Order" shall mean an order of the Bankruptcy Court that shall remise, release and forever discharge the Global Parties of and from any and all past, present and future claims, bad faith claims, contracts, insurance policies, extra contractual claims, duties, reckonings, controversies, agreements, promises, responsibilities, covenants, accounts, sanctions, torts, violations of any statute or regulation, statutory liability, administrative, judicial or arbitral proceedings, damages, demands, suits debts, actions or causes of action of any kind, nature or description, direct or indirect, contingent or absolute, both known and unknown, in law or equity, in any way related to or arising out of the Debtor, Avantair, Inc., the Trustee, the Bankruptcy Case, the Haugland Group Plaintiffs, any Insured, any aircraft, component or thing of any kind and nature insured under the ManagAir Policy, and any person or entity that is an Insured under the ManagAir Policy. Without limiting the scope of the foregoing, the Bar Order as stated above includes and applies to any claims arising out of, connected with, or in any way relating to the ManagAir Policy, including without limitation the claims asserted by the Competing Claimants, to any claims arising out of, connected with, or in any way relating to the Schumacher Adversary Proceeding (which shall be dismissed with prejudice after the satisfaction of the Conditions Precedent and clearance of the Settlement Payment), to any claims arising out of, connected with, or in any way relating to the SC Action (which shall be dismissed with prejudice after the satisfaction of the Conditions Precedent and clearance of the Settlement Payment), to any claims asserted by the Trustee on behalf of the bankruptcy estate of the Debtor, to any claims

that any person or entity or Insured ever had or may now or hereafter own, hold, have or claim to have by reason of any matter, cause or thing whatsoever from the beginning of the world to the date the Bar Order is approved, whether under the law of Florida or any other state, territory, commonwealth or possession of the United States, or the laws of the United States of America or any other nation, or any treaty entered into amongst any of them.

Without limiting in any way the scope of the foregoing, the Bar Order as stated above includes a full policyholders' release of all claims and demands for any benefits under the ManagAir Policy, or any predecessor policy, including but not limited to any coverage rights, any claim for first party benefits, any right to compensation for physical damage losses, property damage losses, personal injury or bodily injury benefits, any right to defense or indemnity against third party claims, or any other benefits or coverage of any nature whatsoever under the ManagAir Policy, or any predecessor policy. Provided, however, that the Bar Order shall not release or bar any obligations of Global Aerospace under the ManagAir policy for any third party N168SL Claims arising from the crash of N168SL. Global Aerospace will continue to defend any N168SL third party claims arising from the crash of N168SL, pursuant to the terms and conditions of the ManagAir Policy, and Global Aerospace will indemnify the Debtor against any recovery on third party N168SL claims by way of settlement or judgment against Avantair, Inc. pursuant to the terms and conditions of the ManagAir Policy.

4. "CCA Plaintiffs" means Correctional Corporation of America of Tennessee, Inc., a Fractional Owner of the following aircraft: N138SL, N162SL and N164SL.

5. "Certain Fractional Owners" shall mean those fractional owners listed on Exhibit 8 (Doc. No. 1906-8) filed in the Bankruptcy Case, and any other fractional owners who may not be listed on Exhibit 8 but who at one time or another joined the group identified in the Stipulated Order as "Certain Fractional Owners."

6. "Competing Claimants" shall mean the Fuller Entities, the LW Air Entities, the N130SL Plaintiffs, the Certain Fractional Owners, and the CCA Plaintiffs. The Competing Claimants are sometimes each referred to separately as a "Competing Claimant."

7. "D&O Motion" shall mean the Motion of Chapter 7 Trustee Beth Ann Scharrer to Approve Settlement and Compromise of Controversy with the Former Officers, Directors, and Employees of Avantair, Inc. and Request for Entry of Bar Order (Doc. No. 1787).

8. "D&O Settlement" shall mean that certain settlement described in the D&O Motion.

9. "Debtor" shall mean Avantair, Inc., the debtor in the pending Bankruptcy Case.

10. "Final and Non-appealable Order" (as to the D&O Settlement and D&O Motion and as to this Settlement Agreement including the Bar Order and the 9019 Motion) shall mean:

(A) an order of the United States Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "9019 Order") approving the referenced settlement; and

(B) the 9019 Order has not been reversed, stayed, modified or amended, and as to which (i) the time to appeal, petition for certiorari or move for reargument, rehearing or a new trial has expired and no appeal, petition for certiorari or motion for reargument, rehearing or a new trial, respectively, has been timely filed (which time period shall mean, with respect to motions to correct such 9019 Order under Rule 9024 of the Federal Rules of Bankruptcy Procedure, Rule 60 of the Federal Rules of Civil Procedure or otherwise, 14 days after the entry of such 9019 Order), or (ii) any appeal, any petition for certiorari or any motion for reargument, rehearing or a new trial that has been or may be filed has been resolved by the highest court (or any other tribunal having appellate jurisdiction over the 9019 Order) to which the 9019 Order was appealed or from which certiorari or reargument, rehearing or a new trial was sought, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing or a new trial shall have expired without such actions having been taken.

11. "Fuller Entities" shall mean MidSouth Services, Inc. and Clear Aircraft, Inc., the owners of the following aircraft which were at one time insured aircraft under the ManagAir Policy: N113SL, N122PA, N157GA, N179SL, N180HM, N183SL, N197SL and N301SL.

12. "Global Aerospace Mediation Term Sheet" shall mean the term sheet attached to the Global Settlement Motion.

13. "Global Compromise" shall mean the compromise by and between the Trustee and Global Aerospace that is the subject of the Global Aerospace Mediation Term Sheet and this Settlement Agreement.

14. "Global Objection" shall mean the Limited Objection of Global Aerospace to Trustee's Motion to Approve D&O Settlement (Doc. No. 1807).

15. "Global Parties" shall collectively mean Global Aerospace, Inc., American Alternative Insurance Corporation, Mitsui Sumitomo Insurance Company of America, National Indemnity Company, Tokio Marine & Nichido Fire Insurance Company, Ltd. (USB), and all reinsurers and insurers thereof, and all of their predecessors, successors, assigns, affiliates and related entities, insurers, attorneys, trustees, officers, directors, agents, employees and heirs.

16. "Global Settlement Motion" shall mean the Amended Motion to Approve Settlement and Compromise of Controversy with Global Aerospace, Inc. and Request for Entry of Bar Order (Doc. 1997) filed by the Trustee in the Bankruptcy Case.

17. "Haugland Group Plaintiffs" means those entities and persons who are plaintiffs in the lawsuit pending In The Court of the Sixth Judicial Circuit, In and For Pinellas County, Florida, Case 14-001034-CI, including but not limited to the following: Haugland Group, LLC; GLL Air, LLC; Irwin Helford Family Trust; Jack Kuhne; GMB Management LLC; Specialty Holdings, Inc. and K&M Enterprises LLC.

18. "Insured" or "Insureds" means Avantair, Inc., the Trustee to the extent the Trustee is the successor to any rights of Avantair, Inc., under the ManagAir Policy and to the further extent the Trustee claims any interest, ownership or rights under the ManagAir Policy, all fractional owners and owners and lessors of aircraft insured under

the ManagAir Policy, and all those persons and entities that fall within the definition of "Insured" as described in the ManagAir Policy, including but not limited to those defined as a "Named Insured" or a "first Named Insured" or "Insured" or any person or entity listed on any Aircraft Management Agreement with Avantair, Inc., any Managed Aircraft Schedule, endorsement or schedule to the ManagAir Policy.

19. "LW Air Entities" means LW Air I LLC, LW Air II LLC, LW Air III LLC, LW Air IV LLC and LW Air V LLC, the owners of the following aircraft which at one time were insured under the ManagAir Policy: N184SL, N189SL, N191SL, N192SL and N196SL.

20. "ManagAir Policy" shall mean the insurance policy issued through Global Aerospace, Inc., to Avantair, Inc., with a policy period commencing July 1, 2010, and a Policy Number 13000690, including all endorsements, schedules and Managed Aircraft Schedules thereto. The ManagAir Policy was cancelled in its entirety on August 30, 2013.

21. "N130SL Plaintiffs" shall mean the named plaintiffs in the SC Action.

22. "N168SL Aircraft" shall mean the Piaggio P-180 Aircraft, serial number 1139, FAA tail N168SL, and all engines, propellers, parts and components that were installed on the aircraft as of November 16, 2011.

23. "N168SL Claims" shall mean any third party claims under the ManagAir Policy based upon the incident involving N168SL on November 16, 2011, at Flint-Bishop International Airport.

24. "Parties" shall mean the Trustee and Global Aerospace.

25. "SC Action" shall mean the lawsuit filed by the N130SL Plaintiffs that is pending in the United States District Court, District of South Carolina, Charleston Division (Civil Action 2:14-cv-01930-DCN).

26. "Schumacher Adversary Proceeding" shall mean that certain adversary proceeding pending in the Bankruptcy Court entitled Schumacher v. Global Aerospace, Inc. (Adv. No.: 8:15-ap-00914-CPM).

27. "Settlement Payment" shall mean a payment to the Trustee in the amount of $2,050,000.00 (Two Million Fifty Thousand Dollars).

28. "Stipulated Order" shall mean, collectively, the following Orders that were entered by the Bankruptcy Court in the Bankruptcy Case on the Motion for Determination of Real Party-in-Interest: Stipulated Interim Order on Motion of Global Aerospace That Trustee is the Real Party-In-Interest for Submitting and Managing of Alleged Claims for Benefits Under the ManagAir Policy (Doc. No. 1472), Agreed Supplement to Stipulated Interim Order (Doc. No. 1617), and Order (i) Continuing Hearing; and (ii) Amending Stipulated Interim Order (Doc. No. 1734).

**TERMS**

**1. Settlement Payment**

Within five (5) business days after satisfaction of the Conditions Precedent described in Paragraph 6 herein, Global Aerospace shall pay to the Trustee in care of counsel for the Trustee, Adams and Reese, LLP, the Settlement Payment. Pursuant to the Stipulated Order, the Trustee shall have the responsibility for the division, allocation or splitting and distribution of the Settlement Payment amongst the Competing Claimants, or otherwise, which allocation and distribution shall be subject to the

approval of the Bankruptcy Court in connection with the approval of the Global Compromise and Global Settlement Motion. Global Aerospace shall have no obligation or responsibility to divide, allocate or split the Settlement Payment.

**2. Release, Salvage and Subrogation Rights**

Upon confirmation of receipt and bank clearance of the funds that are the subject of the Settlement Payment and after satisfaction of the Conditions Precedent described in Paragraph 6 herein, the Trustee on behalf of the bankruptcy estate of the Debtor hereby remises, release and forever discharges the Global Parties from any and all past, present and future claims, bad faith claims, contracts, insurance policies, extra contractual claims, duties, reckonings, controversies, agreements, promises, responsibilities, covenants, accounts, sanctions, torts, violations of any statute or regulation, statutory liability, administrative, judicial or arbitral proceedings, damages, demands, suits debts, actions or causes of action of any kind, nature or description, direct or indirect, contingent or absolute, both known and unknown, in law or equity, that the Trustee on behalf of the bankruptcy estate of the Debtor, ever had or may now or hereafter own, hold, have or claim to have against the Global Parties by reason of any matter, cause or thing whatsoever from the beginning of the world to the date of this Settlement Agreement is approved, whether such claims were made or could have been made that the Trustee ever had or now or may have against the Global Parties arising out of, connected with, or in any way related to the ManagAir Policy or any predecessor insurance policy of Global Aerospace, Debtor, the Trustee, the Bankruptcy Case, or arising under or in any way related to the ManagAir Policy. The Trustee understands and acknowledges that she may hereafter discover facts in addition to or

different from those that are currently known or believed to be true with respect to the subject matter of this release, but agrees that she has taken that possibility into account in reaching this Settlement Agreement and that, notwithstanding the discovery or existence of any such additional or different facts, as to which she expressly assumes the risk, the Trustee fully, finally, and forever settles and releases any and all claims of the bankruptcy estate of the Debtor against the Global Parties as set forth above herein. Without limiting the generality or the applicability of the foregoing, the Trustee specifically releases all claims, rights, or title to any first or third party or other coverage benefits, insurance benefits of any type or nature, claims, or proceeds under the ManagAir Policy which the bankruptcy estate of the Debtor claims to have now or may have in the future concerning the ManagAir Policy and hereby gives the Global Parties a complete and full ManagAir Policy release.

Notwithstanding the Releases given in this Paragraph 2, it is understood and agreed that the Releases shall not extend to any third party N168SL claim that has been made because of the crash landing of N168SL. Global Aerospace will continue to defend any third party N168SL claim arising from the N168SL crash, pursuant to the terms and conditions of the ManagAir Policy, and Global Aerospace will indemnify Debtor against any recovery by way of settlement or judgment against Avantair, Inc., on any such third party N168SL claim, pursuant to the terms and conditions of the ManagAir Policy.

The Global Parties shall not have any right to any interest in any aircraft, engine or component insured under the ManagAir Policy as a result of the Settlement Payment, and each of the Global Parties surrenders and releases any rights it may have to claim

an interest in any aircraft, engine, component or accessory insured under the ManagAir Policy, except as expressly provided in this Paragraph 2. Notwithstanding the foregoing, Global Aerospace will retain the salvage rights to the N168SL Aircraft, including its hull, engines, (Pratt & Whitney PT6-A, S/N PCE-RW0006 and Pratt & Whitney PT6-A, S/N PCE-RW0017) components and accessories that are currently with the aircraft or in the possession or control of Global Aerospace. The salvage rights include the right to receive any funds or value that might be recovered upon sale or disposition of the aircraft, its hull, engines, components and accessories. Upon the request of Global Aerospace, the Trustee will seek the entry of an Order of the Bankruptcy Court conveying title and/or ownership of the N168SL aircraft, its hull, engines, components and accessories. The Trustee and the Debtor's bankruptcy estate shall have no liability for storage, maintenance, repairs, personal property taxes, or other expenses relating to the N168SL Aircraft accruing from and after the commencement of the Bankruptcy Case (collectively "N168SL Expenses"), and Global Aerospace will pay and indemnify the Trustee and Debtor's bankruptcy estate from any such N168SL Expenses.

As a result of the making of the Settlement Payment pursuant to the Settlement Agreement, the Global Parties shall not have any rights of subrogation against the Debtor or former officers, directors or former employees of Avantair, Inc., or any other persons or entities or their current or former officers, directors, employees, agents and attorneys: (i) receiving any part of the proceeds of the Settlement Payment; (ii) who/which are releasing any rights against the Global Parties pursuant to this Settlement Agreement; or (iii) who/which will be barred from asserting any claims

against any person or entity under the Bankruptcy Court Bar Orders to be entered pursuant to this Settlement Agreement and the Bar Order to be entered pursuant to the D&O Settlement.

**3. [intentionally deleted]**

**4. Bankruptcy Court Approval**

The Trustee has filed a motion in the Bankruptcy Case (Doc. 1997) (the "9019 Motion") seeking approval of the Bankruptcy Court of the settlement set forth in this Settlement Agreement. In the 9019 Motion, the Trustee seeks approval of the Bar Order. The approval of the Bar Order in a form acceptable to Global Aerospace is a Condition Precedent as set forth in Paragraph 6.

**5. Global Aerospace's Contingent Withdrawal of the Global Objection**

Contingent upon the entry of an Order of the Bankruptcy Court approving this Settlement Agreement, and subject to the entry of the final and Non-appealable Orders described in Paragraph 6 herein, Global Aerospace shall withdraw its pending Global Objection to the D&O Settlement and D&O Motion, and Global Aerospace shall take no action to object to or oppose the D&O Settlement and D&O Motion. In the event that the Bankruptcy Court does not approve this Settlement Agreement (including the Bar Order), then Global Aerospace shall have the full, complete and unimpaired right to continue with its objection to the D&O Settlement and D&O Motion, and the Trustee shall retain all rights to proceed with obtaining Bankruptcy Court approval of the D&O Settlement and D&O Motion.

**6. Conditions Precedent**

The Parties' respective consent to the settlement set forth in this Settlement Agreement is contingent upon the Bankruptcy Court entering a Final and Non-appealable Order Approving the D&O Settlement and D&O Motion. The Settlement set forth in this Settlement Agreement is contingent upon satisfaction of each and all of the following conditions precedent (collectively, the "Conditions Precedent"): (a) entry of a Final and Non-appealable Order Approving the D&O Settlement and D&O Motion (including the associated bar order); (b) entry of a Final and Non-appealable Order approving this Settlement Agreement (including the Bar Order) and the 9019 Motion; and (c) the Trustee seeking and obtaining a Final and Non-appealable Bar Order in a form acceptable to Global Aerospace. In the event that all Conditions Precedent are not satisfied, then nothing herein shall be deemed a representation or admission by any of the Parties as to any issue; the terms of this Settlement Agreement and the release set forth herein shall be deemed null and void, including the validity of any and all instruments executed by any of the Parties for its performance and implementation prior to its approval; and the Parties shall be returned to the *status quo* each Party held prior to entry into this Settlement Agreement. In the event that each and all of the Conditions Precedent are satisfied, this Settlement Agreement shall be deemed binding on the Parties, and the Bar Order shall become effective upon the payment and clearance of the Settlement Payment into the account designated by the counsel for the Trustee.

**7. No Admissions.**

This Settlement Agreement is entered into for settlement and compromise of disputed claims and shall never be treated as an admission by any Party of any liability whatsoever or as an admission by any Party of any violation of the rights of any other

Party or person, or the violation of any law, statute, regulation, duty or contract whatsoever. By entering into this Settlement Agreement, the Parties do so solely to avoid the inconvenience, expense, and uncertainty of further proceedings and expressly disclaim any liability to any other party or person.

**8. Attorneys' Fees and Costs.**

Each Party will bear its own expenses, including any costs or attorneys' fees incurred in connection with the negotiation and execution of this Settlement Agreement and the Bankruptcy Case. In the event that a Party hereto initiates a lawsuit or other proceeding to enforce the provisions of this Settlement Agreement or asserts the provisions of this Settlement Agreement as a defense to a lawsuit or other proceeding brought by any other Party, however, the Party prevailing in such lawsuit or civil proceeding shall be paid, in addition to all other sums that may be required to be paid, a reasonable sum for the prevailing Party's attorneys' fees and costs of action, including paralegal fees and any fees and costs on appeal.

**9. Notices.**

All notices or information to be provided under this Settlement Agreement shall be sent to the following:

a. The Trustee:

Lynn Welter Sherman, Esq.
ADAMS AND REESE LLP
Bank of America Plaza
101 East Kennedy Boulevard, Suite 4000
Tampa, Florida 33602
Tel: 813.402.2880
Email: lynn.sherman@arlaw.com

b. Global Aerospace:

Roger Clark
The Clark Law Group
11355 W. Olympic Blvd., Ste. 303
Los Angeles, CA 90061
Tel: 310-478-0077
rclark@cgold.cc

and

Keith T. Appleby, Esq.
Banker Lopez Gassler P.A.
501 East Kennedy Blvd, Suite 1700
Tampa, Florida 33602
Tel: 813-222-1157
kappleby@bankerlopez.com

**10. Entire Agreement.**

Other than the Term Sheet, this Settlement Agreement constitutes the only existing and binding agreement of settlement among the Parties, and the Parties acknowledge that there are no other warranties, promises, assurances or representations of any kind, express or implied, upon which the Parties have relied in entering into this Settlement Agreement, unless expressly set forth herein. To the extent that there are any inconsistencies and/or conflicts between the Term Sheet and this Settlement Agreement, the terms of this Settlement Agreement shall control. This Settlement Agreement shall not be modified except by written agreement signed by the Party against whom modification is sought.

**11. Parties Affected.**

This Settlement Agreement shall inure to the benefit of the Parties and their officers, directors, shareholders, employees, partners, attorneys, professionals, affiliates, representatives, spouses, trustees, heirs, successors, and assigns.

**12. Governing Law/Forum Selection.**

The Parties agree that the Bankruptcy Court shall have continuing jurisdiction to enforce the terms of this Settlement Agreement and the Parties expressly consent to the exercise of personal jurisdiction over them for that limited purpose. This Settlement Agreement shall be governed by, and construed and enforced in accordance with the laws of the State of Florida, without regard to its conflict of law principles.

**13. Acknowledgment of Terms.**

The Parties have read and understand the terms of this Settlement Agreement, have consulted with their respective counsel, and understand and acknowledge the significance and consequence of each such term. No Party is relying on information provided by or from the other Party in entering this Settlement Agreement and there are no duties of disclosure by either Party to the other. This Settlement Agreement was executed after arm's length negotiations between the Parties and their respective counsel, and reflects the conclusion of the Parties that this Settlement Agreement is in the best interests of the Parties. Each Party represents and warrants that the person executing this Settlement Agreement on his, her, or its behalf has all authority and legal right to do so and separately acknowledges and represents that this representation and warranty is an essential and material provision of this settlement and shall survive execution of this Settlement Agreement.

**14. Advice of Counsel.**

The Parties acknowledge that they have been represented by counsel of their own choice in the negotiations leading up to the execution of this Settlement Agreement, have read this Settlement Agreement, and have had the opportunity to

receive an explanation from legal counsel regarding the legal nature and effect of same. The Parties have had the Settlement Agreement fully explained to them by their respective counsel and understand the terms and provisions of this Settlement Agreement and its nature and effect. The Parties further represent that they are entering into this Settlement Agreement freely and voluntarily, relying solely upon the advice of their own counsel, and not relying on the representation of any other Party or of counsel for any other Party.

**15. Severability**. If any term of this Settlement Agreement is deemed unenforceable, void or against public policy by a Court of competent jurisdiction, that term shall be severed without affecting the remainder of this Settlement Agreement.

**16. Neutral Interpretation**.

In the event any dispute arises among the Parties with regard to the interpretation of any term of this Settlement Agreement, all of the Parties shall be considered collectively to be the drafting party and any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall be inapplicable.

**17. Execution of Documents**. This Settlement Agreement may be executed in counterparts, that is, all signatures need not appear on the same copy and execution of counterparts shall have the same force and effect as if the Parties had signed the same instrument. All such executed copies shall together constitute the complete Settlement Agreement. The Parties may execute this Settlement Agreement and create a complete set of signatures by exchanging PDF copies of the executed signature pages. Signatures transmitted in PDF format shall have the same effect as original signatures.

**18. Divisions and Headings.**

The divisions of this Settlement Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Settlement Agreement.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement, as follows:

Dated: ____________________________

BETH ANN SCHARRER, AS CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF AVANTAIR, INC.

________________________________________

GLOBAL AEROSPACE, INC.

By:____________________________

Its:____________________________